UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL ST. AUBYN NEWELL, A43-730-694,

                      Petitioner,

              -v-                                      13-CV-475-JTC

ERIC H. HOLDER, Jr., Attorney General
of the United States,
WALTER INGRAM, Office of Enforcement
and Removal Operations Post Order Custody
Review Unit Chief, Washington DC
Field Office,
MICHAEL PHILIPS, Field Office Director,
Office of Enforcement and Removal
Operations, Buffalo Field Office,
Department of Homeland Security
Bureau of Immigration and Customs
Enforcement,
SEAN CALLAGHER, Designated Field Office
Director, ERO, Buffalo Federal Detention
Facility,
TODD TRYON, Assistant Field Office Director
Buffalo Federal Detention Facility,
MR. SCHRADER, Supervisory Detention and
Deportation Officer, Buffalo Federal
Detention Facility,
OFFICER GUNTHER, Deportation Officer,
Buffalo Federal Detention Facility,

                      Respondents.

_____

## INTRODUCTION

      Petitioner, Michael St. Aubyn Newell, an alien under a final order of removal from

the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241 seeking release from detention in the custody of the United States

Department of Homeland Security, Immigration and Customs Enforcement (collectively,

"DHS"), pending the execution of a final immigration order of removal issued against him. Item 1.  As directed by this court's order entered on May 15, 2013 (Item 2), respondent[1] has submitted an answer and return (Item 4), along with an accompanying memorandum of law (Item 5), in opposition to the petition, and petitioner has submitted a reply (Item 6). For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Jamaica, was admitted to the United States as a lawful permanent resident at New York, New York, on or about March 2, 1993.  *See* Item 4-1 ("Payan Decl."), ¶ 5.

According to DHS records, petitioner was convicted of the following state law violations:

- On or about January 21, 2004, petitioner was convicted in the Circuit Court of the City of Norfolk, Virginia, of Possession of less than five (5) pounds of marijuana with intent to distribute, in violation of Section 18.2-248-1 of the Virginia Code.  He was sentenced to 5 years.

- On or about September 2, 2005, petitioner was convicted of Possession of a Controlled Substance, marijuana, with intent to distribute, in violation of Section 5.602 of the Maryland Code.   He was sentenced to 2 years probation.

---

[1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

Payan Decl., ¶ 6; Item 4-2 ("Exh. A"), pp. 14, 16, 21.

Based on his criminal conviction in Virginia, petitioner was served with a Notice to Appear ("NTA") dated April 25, 2011, which charged petitioner with being removable from the United States pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(B)(i), as an alien convicted of a controlled substance offense, and pursuant to INA § 237(a)(2)(A)(iii), as an alien who has been convicted of an aggravated felony as defined in INA § 101(a)943)(A), an offense relating to trafficking in a controlled substance. *See* Exh. A, pp. 16-18.

On November 17, 2011, petitioner was received into DHS custody pursuant to a Warrant of Arrest.  Payan Decl., ¶ 8; Exh. A, pp. 19-22.  On December 7, 2011, petitioner was served with additional charges of inadmissibility/deportation related to his Maryland criminal conviction.  Exh. A, pp. 14-15.  On May 25, 2012, an Immigration Judge ("IJ") ordered petitioner's removal from the United States to Jamaica. *Id.*, pp. 12-13.  Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), and the order of removal became final on September 27, 2012, when the BIA dismissed petitioner's appeal. *Id.*, p. 11.

On October 11, 2012 and October 23,  2012, DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States.  Exh. A, pp. 7-10.  The warning form advised petitioner of penalties under INA § 243 for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that, pursuant to INA § 241(a)(1)(C), failure to comply or provide sufficient evidence of his inability to comply

may result in the extension of the removal period and subject him to further detention.  *Id.*

On October 15, 2012, DHS sent a presentation packet to the Consulate General of Jamaica ("the Consulate") in New York, New York, requesting that a travel document be issued for petitioner's removal.  Exh. A, pp. 23-28.  Petitioner was interviewed by telephone by a Consulate representative on December 4, 2012. Payan Decl., ¶ 15.  DHS records indicate that DHS representatives contacted the Consulate on eleven occasions between October 16, 2012 and February 21, 2013 regarding the status of petitioner's travel document.  *Id.,* ¶ 14.

In accordance with immigration regulations, DHS conducted a review of petitioner's custody status in December 2012.  On or about December 18, 2012, petitioner was notified that DHS determined to continue his detention.  Exhibit A, p. 6.  On March 7, 2013, DHS was notified that the Consulate had approved the issuance of a travel document for petitioner pending the receipt of a travel itinerary.  Payan Decl., ¶ 17.  Thereafter, DHS made travel arrangements for petitioner to be removed from the United States to Jamaica on March 28, 2012.  *Id.*  The travel document was issued March 8, 2013.  *Id.,* ¶ 18.

On March 18, 2013, petitioner filed a petition in the Second Circuit Court of Appeals seeking  review of the BIA's denial of his appeal from the removal order, along with a motion for a stay of removal.  Exh. A, pp. 32-34.  On April 1, 2013, the government filed a motion to dismiss the petition and a motion in opposition to the stay of removal.  Payan Decl., ¶ 22.  These motions are pending before the Second Circuit.  *Id.*

An additional review of petitioner's custody status was conducted in March 2013, including an in-person interview of petitioner at the Buffalo Federal Detention Facility in Batavia, New York.  Exh. A, pp. 4-5.  On March 28, 2013, petitioner was notified that DHS

4

determined to continue his detention.  Exh. A, pp. 2-3.

On May 1, 2013, petitioner filed a motion with the BIA to reopen his immigration removal proceedings.  That motion was denied on June 18, 2013.  Payan Decl., ¶ 23. Petitioner filed this action on May 7, 2013, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in DHS custody since September 27, 2012, when the Immigration Judge's order of removal became final, is unlawful because it has exceeded the "presumptively reasonable" six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether

the alien is to be removed from the United States, and INA § 241, which authorizes

detention of aliens after the issuance of a final removal order.  In this case, petitioner's

detention at the time he filed his habeas petition was pursuant to INA § 241(a), which

requires the Attorney General to accomplish an alien's removal from the United States

within a period of ninety days (the "removal period"), commencing on the latest of the

following dates:

> (i)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2)

("During the removal period, the Attorney General *shall* detain the alien.").  The statute also

authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens (like

petitioner) ordered removed due to conviction of a crime–beyond the expiration of the

ninety-day removal period if it is determined that the alien "is a risk to the community or

unlikely to comply with the order of removal …."  INA § 241(a)(6).[2]

---

[2]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States.  *Zadvydas*, 533 U.S. at 699-700.  Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …."  *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal.  Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future."

8 C.F.R. § 241.13(d)(1).   The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents."   8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.  Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released.  8 C.F.R. § 241.13(g)(1).  However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination.  *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on November 17, 2011 pursuant to a Warrant of Arrest pending completion of immigration removal proceedings, as authorized by INA § 236.[3]  *See* Payan Decl., ¶ 8.  This detention continued until September 27, 2012, when the IJ's order of removal became final upon the BIA's dismissal of petitioner's appeal.  *See* 8 C.F.R. § 1241.1(a) (order of removal becomes final upon dismissal of appeal by BIA).

After the order of removal became final, petitioner's detention was authorized by INA § 241(a), and the removal period commenced.  DHS promptly secured a travel document for petitioner's removal, and made arrangements for petitioner to be removed from the United States to Jamaica on March 28, 2013.  Payan Decl., ¶¶ 13-14, 17-18.  Then, on March 18, 2013, petitioner filed his petition in the Second Circuit for review of the BIA's dismissal of his appeal from the removal order, along with a motion for a stay of removal pending the circuit court's ruling.  *Id.* at ¶ 19.

Numerous decisions by the federal courts within the Second Circuit have held that the filing of a petition for circuit court review of the final order of removal, accompanied by a motion for stay of removal, triggers the application of a "forbearance policy" recognized by agreement between DHS and the Second Circuit under which DHS has agreed not to effectuate the removal of an alien while he or she has a petition for review pending before the circuit court.  *See, e.g., Persaud v. Holder*, 2011 WL 5326465, at *1 (W.D.N.Y. Nov. 3, 2011) (filing of petition for circuit court review of final order of removal along with motion

---

[3]Petitioner has not challenged his pre-removal order detention under INA § 236.  *See Persaud v. Holder*, 2011 WL 5326465, at *2 (W.D.N.Y. Nov. 3, 2011) (detention pursuant to INA § 236 during period prior to pre-final order of removal did not violate due process; citing *Demore v. Kim*, 538 U.S. 510, 531 (2003)).

for stay of removal triggers "forbearance policy"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010) (even though circuit court had not "formally" ruled on motion to stay accompanying petition for review of BIA's dismissal of appeal from removal order, forbearance policy is "the equivalent of a court-ordered stay of removal"); *Shehnaz v. Ashcroft,* 2004 WL 2378371, at *2 (S.D.N.Y. Oct. 25, 2004) (where circuit court had not yet ruled on alien's requests to stay removal and for review of BIA's order, a stay of removal was in effect pursuant to Second Circuit forbearance policy).

The court notes that, in this case, petitioner waited nearly six months, until travel arrangements had been made and his removal was imminent, to file a petition for review in the Second Circuit.  Although no reported *post-Zadvydas* Second Circuit case has directly addressed continued detention arising from the application of the forbearance policy, there is ample case law suggesting that a petitioner's detention that has been prolonged primarily by the pursuit of judicial remedies does not generally violate due process.  *See Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) ("consistent pattern" of filing petition for circuit court review accompanied by motions to stay removal triggered application of Second Circuit's forbearance policy; petitioner's "self-inflicted wound should not establish grounds for [his] *Zadvydas* claim") (citing *Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir. 1991) (petitioner cannot rely on delays resulting from litigation strategy to claim that prolonged detention violates substantive due process)); *Sanusi v. I.N.S.,* 100 F. App'x 49, 51 (2d Cir. 2004) (six-year detention, prolonged primarily by petitioner's pursuit of judicial review, does not in itself violate due process); *Luna-Aponte v. Holder,* 743 F.Supp.2d at 199-200 (detention in excess of three years did not violate due process,  as

delay was not indefinite and was not attributable to government, but rather was result of petitioner's litigation strategy).

Accordingly, because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment.  *See Doherty*, 943 F.2d at 211 (refusing to find eight-year detention unconstitutional where alien's pursuit of judicial and administrative review caused the delay in removal); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four year detention); *see also Khaleque v. Department of Homeland Sec*., 2009 WL 81318, at *3 (W.D.N.Y. Jan. 9, 2009) (denying alien's habeas petition upon finding that alien "elected to file a petition for review and a motion for a stay of removal" which "acted to prevent his removal until the Second Circuit issued its mandate").

Alternatively, considering petitioner's habeas challenge under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing."  *Id*.; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that

petitioner has failed to sustain his initial burden under *Zadvydas*.  The petition sets forth

no factual basis to substantiate petitioner's belief that there is no significant likelihood he

can be removed to Jamaica in the reasonably foreseeable future.  As discussed above,

DHS records show that the Consulate has, in fact, issued a travel document for petitioner,

and travel arrangements for his removal were made by DHS but were cancelled when the

petition for review and request for stay of removal were filed with the Second Circuit.

Payan Decl., ¶¶ 17-19.

In addition, the available statistical evidence reveals that in recent years, DHS has

successfully repatriated significant numbers of aliens to Jamaica, indicating that there are

no apparent institutional barriers to petitioner's removal.  For example, DHS reports show

that in fiscal year ("FY") 2009, a total of 1,664 aliens were repatriated to Jamaica; in FY

2010, 1,487 aliens were repatriated to Jamaica; and in FY 2011, 1,474 aliens were

repatriated to Jamaica.  *See* DHS Yearbook of Immigration Statistics: 2011, Table 41:

http://www.dhs.gov/yearbook-immigration-statistics-2011-3.  This evidence, considered

along with the circumstances of the DHS's efforts prior to forbearance, provide a

reasonable basis for DHS's expectation that removal can be accomplished within the

reasonably foreseeable future following final resolution of petitioner's request for review by

the Second Circuit, after which time the necessary travel arrangements may be completed

for petitioner's release from DHS custody and his repatriation to Jamaica.

Significantly, petitioner has provided no evidence to contradict this expectation, or

to otherwise establish his compliance with the requirements of the DHS regulations

described above.   Instead, petitioner merely states that his removal cannot be

accomplished in the reasonably foreseeable future due to the pending petition for review

12

before the Second Circuit.  However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*.  *See, e.g., Khaleque*, 2009 WL 81318, at *4 (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof.); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial

burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and that petitioner may not rely on the delay resulting from his request for circuit court review of the final order of removal to claim that his prolonged detention violates substantive due process.  Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed.  This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable.   *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:   September 25, 2013
p:\pending\2013\13-475.sept18.2013